May it please the court, Tim Foley on behalf of Petitioner Pennington. I'm going to go directly to the heart of the matter, which is the question of prejudice. Does the erroneous admission of the Kettleson testimony, including the Cottrell unconfronted statements, the constitutional violation, does the admission of that testimony require the reversal of the four felonies imposed on Mr. Pennington? Now the standard under Brecht v. Abramson is does the error have a substantial and injurious effect on the deliberations of the jury? This court I'm sure is familiar with questions of whether a constitutional error is harmful or harmless, and there is a certain amount of subjectivity that a reviewer brings to this sort of question. And what I want to do today is identify some objective characteristics which demonstrate the prejudice in this case. First, the jury sent out a note asking for the Kettleson testimony to be re-read. Now it seems to me that when you're talking about the question of whether certain testimony has an influence or effect on the jury deliberations, the fact that the jury specifically asked during the deliberations for re-reading of a portion of that testimony is a very important characteristic and indeed shows influence and effect on the jury deliberations. Secondly, the jury deliberated in this case for three full days and part of another. Traditionally, when you're looking at a question of harmless error, you're looking at whether it's a close case. This was a case where the trial took six days, the jury deliberated for three days, and part of another, sending out seven notes during their deliberations. All right. So when there was As part of our evaluation, do how much weight should we put on the issue of whether or not the testimony was cumulative of other testimony that was presented? The question of whether the testimony was cumulative is an important consideration. But the key is that it has to be cumulative as to reliable evidence. Okay. Could we go through each of the charges and would you just discuss for me whether or not in your view there was other testimony that supported the conviction? All right. Well, the four felonies we're dealing with here are the robbery of Gary Mello, the assault of Gary Mello with a firearm, and then the fourth felony is probationary possession of a firearm. Exactly. Okay. All right. Now, the respondent's position, I believe, is that Gary Mello's testimony, the victim of really all four of these, although the fourth is a condition rather than having a victim, but essentially to the extent Mr. Pennington had possession of a firearm, it occurred during the interaction with Gary Mello. So all those in each of those four felonies, the fourth is Gary Mello. Now, Gary Mello testified. All right. So the question is, I concede that if Gary Mello's testimony was reliable, then the Kettleson testimony, which essentially supports Gary Mello's story, is cumulative. But the problem is All charges? For all of the charges? Well, Kettleson says nothing about whether Mr. Pennington held a firearm. Kettleson's testimony, excuse me, Kettleson's testimony I thought it was important to go through each one of them and articulate if there is independent evidence separate and apart from the testimony you're challenging. That would be important for me for you to articulate that. All right. All right. With regard to the robbery, the Cattrell statement in the Kettleson testimony was that they went to the robbery. I agree that Gary Mello testified that things were taken from him by force and fear. Yes. How about the false imprisonment? Same. Gary Mello testified that he was handcuffed. How about the assault with the firearm? The testimony on that is a little more ambiguous, but Gary Mello does testify that when Mr. Pennington arrived at the scene, he had a firearm that he pointed at Gary Mello. Now, it's interesting that the jury rejected that testimony in refusing to find the enhancement provisions on the robbery and on the false imprisonment charges. In other words, they rejected the personal use requirement of the firearm enhancement provisions. But what I'd like to get to is the question of whether Mello's testimony can be relied upon as cumulative evidence. And it's my position that it cannot for a number of reasons. And one of the most important reasons is because the prosecutor in the case, arguing to the jury, recognized that it was unreliable and conceded to the jury that they should not rely upon Mello's testimony. How about the testimony for Goley? Yes. How about that testimony? For Goley's testimony is tangential to the crimes against Mello. For Goley's testimony does not support the charges against Mello, except insofar as for Goley himself was duct taped in a trailer nearby. Does for Goley's testimony support the robbery charge, in your view? No, it does not. Why not? Because for Goley, there's no testimony in for Goley's, for Goley does not testify that any items are taken from Mello. I thought he said that Mello, let me see, that Penitent pointed a gun at Mello and told him not to move or he would blow his head off. Wasn't that for Goley's testimony? No, that's not for Goley's testimony. For Goley's testimony is that Cottrell came into the trailer with another person, Cottrell pointed a gun at him and for Goley was duct taped and then later on Cottrell came back to the trailer. So for Goley didn't see any of the incidents where the materials were taken? Correct. For Goley's in the trailer the whole time until he escapes and then summons the police. But, Gary, the key here is that Mello and Cottrell are friends, and this is either a battle among friends, a fight, or it's criminal behavior. And so Mello's testimony, given that he initially denied that there was any robbery, denied that there was any crime whatsoever, and then later changes his story, is suspect. It's also suspect because he's a convicted felon, because they're all involved in drugs, and because his testimony itself evidences a failure to elect him and he's a convicted felon. So there are many key points. But the most important thing I want to point out to the court today is the prosecutor's argument, which is the prosecutor recognizing these problems with Mello's testimony says, and I quote, and I will state outright on behalf of my client that if all you had to go on in this case was the word of Gary Mello, your duty would be clear, and that duty would be to acquit. Yeah, but see, the problem here is it's up to the jury whether to believe Mello. And in addition to Mello's testimony, there was the handcuffs were found with regard to the robbery. There was the length of rope, or rather with regard to the false imprisonment, the handcuffs, the length of rope. I think there was a wallet. Mello's wallet was found in a Cottrell truck, along with, I think, some of the items of personal property. Fertilizer. Supposedly taken. Yes. So when the prosecutor says, hey, if there's any corroboration for Mello, you can toss Mello out. But what if there is corroboration for some of the stuff that Mello said? Well, then maybe the jury can believe Mello. And it's up to the jury to believe them. And if there's evidence there, maybe the jury believed that liar. I don't know. I would say that it's up to the jury, but the standard is not whether there's evidence to support the conviction in the record. The standard is whether the unconstitutional evidence, the Kettleson testimony, had a substantial injurious influence. That's part one of Brecht. Part two is, was the error harmless? The Brecht error occurred. Let's go along with you there. Certainly Kettleson's testimony had to have a substantial and injurious effect on the verdict. I'd go along with you there. I don't know about the other two judges. But the next question in Brecht is, okay, given that, was that harmless because there was overwhelming other evidence of guilt or whatever the test is to determine the Brecht error was harmless? Well, I'm not going to concede that it's a separate test. I think if you determine under Brecht that it's harmful, that means the convictions are reversed. Well, that's a good assumption. But no, injurious effect is one thing. All right. Now, if I suppose you have testimony that has an injurious effect on the verdict, but you also have a whole raft of other testimony which overwhelmingly shows that the fellow is guilty, then the Brecht error that had an effect doesn't make any difference because so much other evidence had so much overwhelming effect. That's what I'm getting at. Well, assuming that analysis is correct, my response is that's not the case. There's not overwhelming evidence in that case. Now, that word has been bantied about. But the truth is, it comes down to Gary Mello's testimony. And if Gary Mello's testimony is reliable, yes, he's the victim of these crimes. But my point is that it's not reliable. And even the prosecutor at trial admitted that it wasn't. So how can that was otherwise corroborated? That's not what he said. Well, by Kettleson's testimony, as well as some physical evidence which could go either way. I mean, that's you're correct that that's the argument he made to the jury. He said, here's my corroboration. And included in his discussion of corroboration, particularly with regard to the false imprisonment charge, which is the question of the handcuffs, he points to the Kettleson testimony. And, indeed, that's the testimony that the jury later asked to be reread. Okay. So we have a situation where we've got a note from the jury regarding the unconstitutional evidence. We've got three and a half days of deliberations after a six-day trial. And we've got a prosecutor disavowing the testimony of Gary Mello, which essentially is the only thing that can be relied upon with regard to the four felonies in any direct sense. Seems to me we have harmful error. And I'll reserve whatever time I have for rebuttal. That's fine. Thank you. Good morning. Judy Kayeda, appearing on behalf of Respondent. In my brief, I indicated that the AEDP applied. It doesn't. It doesn't change the outcome of this case. There was no prejudicial error. The evidence was, in fact, overwhelming. The oblique and very fleeting references were not even to the Petitioner's name. It was instead of saying, I, it was instead of saying, he, the witness said, they. And then he corrected it. But that's a violation of Bruton. You would concede that, wouldn't you? I would concede it, but it was very, very, very light Bruton. It's not incredibly low. A little bit of Bruton. Yes, a little Bruton. A little Bruton. Okay. But the jury, I mean, as the Polson Council pointed out, the jury had some difficulty with reaching a verdict in this case. They didn't come back right away with a guilty verdict, and they asked for the testimony to be reread. So doesn't that indicate that this testimony was powerful in their mind? That indicates the testimony was important to the jury. It does not indicate it was important in terms of Petitioner. It might have been important in terms of Kettleson himself. I mean, in terms of the co-defendant, Mr. Cottrell. We don't know what was going on in there in terms of why the jury was asking for the reread. The Cottrell, whether it was for Cottrell or Pennington, we don't know. Kettleson's testimony essentially damned Cottrell, because that's what it was related to, was Cottrell's statements coming out of his mouth regarding his involvement with the crime. And that would have been true if he had simply said he, he, he instead of they. Yes. And there was no issue as to the fact that Petitioner was there, that he assisted in duct taping Fregoli. The jury obviously believed Fregoli, the, the handyman who was in the trailer. The jury. But as the opposing counsel pointed out, Fregoli did not see everything that happened after they left the trailer. No, but the jury can, in fact, look at that, look at Petitioner's conduct in terms of the crime as it, as it's ongoing. Why would Petitioner have been in the trailer assisting in, in, in taping and holding, and holding the Fregoli in the trailer while he was actually at bay, and then not assisting the, the co-defendant in actually taking the property out of the trailer? Petitioner himself admitted at trial that they went there to set the guy straight and to take his stuff and to get a gun, okay? He admitted that during testimony. The jury can look at this whole picture and say it doesn't make sense. But not to commit a robbery. He never, he never admitted that he went there to commit The fact that he doesn't admit it expressly doesn't mean the jury can't find it under the circumstances, and that is exactly what the jury did. They looked at all of these circumstances. They looked at all of the evidence. They looked at the physical evidence. They looked at Mello's testimony, they looked at Fregoli's testimony. But didn't the prosecutor say that Mr. Mello was not really credible?  The jury could still go in there and based upon its own determination of watching Mello testify and watching everybody else testify, make its own determination. You know, the prosecutor can say whatever he wants. The jury is going to feel it, and they're going to determine it based upon what their own determination is. Counsel, wouldn't you concede that this was a pretty close case? No, I would not concede it was a pretty close case. The references were incredibly open. He said he, and then he corrected himself, and he said they, then he corrected himself and said he, and then he went back and he said. But in terms of the ultimate verdict, in terms of the jury coming to a conclusion, you wouldn't agree that this was a close case and it took the jury some time to come to a verdict? I don't agree with that because of the fact that all of this property, including the guy's wallet, he's going to willingly give up his wallet and all of this merchandise to these people, you know, and be handcuffed to something? Why would a rational person give up? That was the point. He wasn't rational. He was on drugs. That was part of the evidence in the case. But the fact is, is that whether he was on drugs or not, he was still imprisoned and duct taped and handcuffed and tied up, and all of this stuff, including his wallet that was taken and his weaponry, regardless of who this guy was, he's not going to give this stuff up willingly, Your Honor. And I think the jury looked at these witnesses, they looked at all the evidence, and that's the conclusion they came to. What about the discrepancies in his testimony regarding the firearms and where they were found and how many there were? What about that evidence? I think that he probably mellowed the victim. Some of those weapons were his. The petitioner himself admitted that the loader, gun loader, was his. And then the police officer testified that one of the weapons found in the office fit the gun loader so that it's fairly apparent that that was petitioner's weapon that went with the gun loader's. But I also think that probably some of those weapons were, in fact, the victim's weapons, and maybe they were stolen from there was an issue, there was some concern about the two defendants went to this guy's place to recover a stolen weapon, a stolen gun that was stolen from somebody. And so maybe that was, in fact, stolen and the victim didn't want to, you know. They wanted to blame the, since they were on trial anyway, then he didn't want to blame them for the other guns? He just didn't want to admit they were his, you know what I mean? It's just, I don't, I'm not saying these guys, the victim, they were friends at some point. They were obviously, there's involvement here. But I don't think he willingly gave up all of his property to these two guys, including petitioner. You know, the jury found, also believe that, based upon all of the evidence. And they looked at it and they determined that the petitioner was guilty of these crimes. And the references, these references during Kettleson's testimony were just incredibly minor. And they could not have affected the verdict. It's just ridiculous. Does the court have any other questions? Thank you. Go ahead, rebuttal. Two points. First, I think it's important to remember that Cottrell, the co-defendant, was the lead player here. So the fact that the jury determined that criminal activity occurred doesn't necessarily mean that they were ready to convict Pennington of all these other charges. Because the jury did distinguish between Cottrell's involvement and Pennington's involvement. And by anybody's admission, Pennington was just sort of along for the ride and was not the lead actor in the confrontation between Cottrell and Mello. The second thing that came up during the Respondent's argument that I want to address is the question of the consideration of Pennington's testimony with regard to the prejudice analysis. And I submit to the court, Pennington, the defendant did testify, my client did testify. And it's my position that under Fahey v. Connecticut and other cases, that in analyzing the harmfulness of an error involving evidence submitted during the prosecution's case, you cannot take into account a defendant who, based upon the prosecution's case, then gets up and testifies. You can't base Fahey v. Connecticut, which is a 63 case, which involves, I believe, a Miranda violation where the defendant then testified and made admissions that were similar to the admissions he made in the prosecution's statement. You're saying you should disregard that? Yes. I don't think the defendant has to make the best of a bad situation. And if the defendant objects to evidence and it's admitted in the prosecution's case, he has to respond to it. So you're saying the fact that the Gruden error occurred required your Mr. Pennington to get up and try to make the best of the fact that he had already been implicated wrongfully in the testimony, Kelson testimony? Yes. I think the effect of this type of error then requires the defense to revise its strategy. But the point being that if there are things in Pennington's testimony that constitute admissions, those should not be included in the court's assessment of the influence and effect of the error because the error occurred in the prosecution's case in chief. And with that, I'll submit. Okay. This case is submitted for a decision. The panel will take a brief recess before we resume for the calendar.
judges: Thompson, Tashima, Rawlinson